# THE STATE OF NORTH DAKOTA UPON THE RELATION OF H. W. BRAATELIEN, as State's Attorney within and for Williams County, North Dakota, v. GEORGE O. DRAKELEY et al., as County Commissioners within and for Williams County, North Dakota.

(143 N. W. 768.)

**County auditor — fees — payment county treasurer — county commissioners — resident — citizen — taxpayer — relator.**

1. When a county auditor retains fees which belong to the county, and fails to account for them and pay them to the county treasurer, and the board of county commissioners neglects and refuses on demand to adjust the acount of such fees and determine the amount thereof as required by § 2430, Revised Codes of 1905, a resident, taxpayer, and citizen of the county is qualified to act as a relator in proceedings in the name of the state to compel action by the county commissioners.

**County commissioners — adjustment of fees — duty — ministerial — mandamus.**

2. The adjustment of such fees by the county commissioners when not paid into the county treasury is a ministerial duty, and mandamus will lie to compel them to audit or adjust the same, but will not lie to compel a determination of any particular sum due or not due the county from the auditor.

**County officials — criminal prosecutions — public duty — remedy — mandamus.**

3. Neither the criminal prosecution, nor the removal of county officials who fail to perform their duties, furnishes an adequate remedy to the public or to taxpayers of the county to which funds unaccounted for belong, and hence are not the other adequate remedies which inhibit the maintenance of proceedings to mandamus the commissioners to adjust such accounts.

**Action — state's attorney — fees — collection.**

4. As to whether the state's attorney of a county can bring an action against the auditor, to collect fees retained by him which belong to the county, without being directed so to do by the board of county commissioners, is not decided.

**County auditor — salary — property — valuation.**

5. By chap. 70, Laws of 1907, fixing the salary of county auditors, the different counties are classified with reference to the assessed valuation of the property in the counties of each class, and this statute reads that no county auditor shall receive more than ———— dollars for his personal services in any one year, the amount depending on the valuation of the property in his county.

*Held* that this enactment fixes the salary of the county auditor at the sum named as applying to the class in which his county belongs.

### Salaries — fees — auditors — accounting.

6. Chapter 70, supra, was enacted to fix the salaries of all the county auditors of the state, and relates to that subject alone, and provides that all moneys received as fees for certifying to abstracts or deeds in excess of the salary as thereby limited shall be paid by the county auditor, at the end of each month, into the revenue fund of the county. *Held* that this requires an accounting by the auditor, at the end of each month, of such fees, and that if the amount exceeds his salary for the month it is his duty to pay the excess into the revenue fund of the county.

### Taxes — payment — real property — transfer — certificate.

7. Chapter 219, Laws of 1907, was enacted for the purpose of enforcing the payment of taxes before the transfer of real property, by requiring a certificate of the county auditor as to the facts, before deeds, with certain exceptions, are entitled to record, and as an incidental matter provided for the fee to be collected by the county auditor for such certificate, and that the auditor might retain such fee as compensation for making his certificate. *Held* that in view of the fact that chapter 70, supra, requiring such fees to be turned into the county treasury, was enacted by the legislature subsequent to the enactment of said chapter 219, the history of the legislation on the subject, and other considerations set forth in the opinion herewith, the requirements of chapter 70 control; and such fees belong to the county, and it is the duty of the county auditor to account for the same monthly and turn any sum in his hands received therefor in excess of his salary for the month into the county treasury.

### Fees — auditors — salary.

8. The provision regarding turning such fees into the county treasury, found in chapter 70, is construed to require such fees received in excess of the salary fixed for the class of counties to which any particular county belongs to be turned into the county treasury, and not, as contended, that each auditor is entitled to retain such fees to an amount equaling the salary provided for the counties embraced in the maximum class.

### Officers — custom — fees — not controlling.

9. While in some cases a course of conduct indicating a common understanding by administrative officers as to the meaning of a statute, when they have followed a usage which has been acquiesced in by all parties concerned for a long period of time, may be entitled to weight in determining its real meaning, it is *held*, in view of the legislation on the subject and the facts in this case, that such understanding and usage on the part of auditors on a subject in which they are personally interested, and in the face of the denial by appellant that there has been such a custom or construction of the statute on the part of at least some of the auditors, is not controlling and would not justify the court in so holding.

**Legislature — policy — officers — salary — fees — legislative intent — doubts — public.**

10. Where the policy of the legislature has been to place county officials on a salaried basis and to turn all fees into the county treasury, such fees belong to the county unless the statute shows a clear and plain legislative intent to grant them to the salaried officers; and doubts should be resolved in favor of the public.

**Statutes — subject — conflict — other statutes.**

. 11. A statute which deals with one subject only will ordinarily control in case of conflict between it and a statute dealing with the same subject only incidentally, and having some other main object.

**County commissioners — auditor — fees — mandamus — premature.**

12. The county commissioners having undoubtedly entertained in good faith the opinion that the fees in question ·belonged to the auditor, and for this reason having refused to order suit brought to recover anything due the county, this court will not assume that, when advised of the law and the duty of the board to make an adjustment with the auditor, that the auditor will refuse or fail, if anything is found due the county, to pay the same, or that in the event that he does so refuse the board will neglect to order the state's attorney to bring suit therefor; hence it is *held* that to mandamus the board to bring suit at this time would be premature, even if mandamus will lie against the board to compel such order.

Opinion filed October 9, 1913.

Appeal from an order of the District Court for Williams County, *Burr,* Special Judge.

Reversed.

## Statement of Facts.

The relator as state's attorney of Williams county and also as a freeholder, taxpayer, resident, and elector of said county, on behalf of himself and other taxpayers similarly situated, procured an order to show cause addressed to George O. Drakeley, C. J. Helle, C. O. Houglum, and Frank Banks, as county commissioners of Williams county, why a writ of mandamus should not issue. His application set forth, among other things, that the respondents were commissioners of said county, that the assessed valuation of the county as returned by the State Board of Equalization for 1906 was $2,241,792; for 1907

was $3,323,029; for 1908 was $5,386,519; for 1909 was $7,699,807; and for the year 1910, $8,517,387; that the salary of the county auditor for said county by reason of the valuation aforesaid was, for 1907, $1,500; for 1908, not more than $1,600; for 1909, not more than $1,900; and for the year 1910, not more than $2,000; and not more than $2,200 for the year 1911; that the said auditor was in duty bound to pay into the revenue fund of the county, at the end of each month, all moneys received for certifying to abstracts and deeds in excess of such salary; that one E. M. Atterberry had been the county auditor of said county at all times since the 1st day of July, 1907, and had, during the time when he held such office and from the 1st day of July, 1907, to the commencement of these proceedings, received a large sum of money in the form of fees for certifying to abstracts and deeds; that he had been paid the salary allowed by law out of a salary fund of the county by warrants which were paid upon presentment at about the dates of their issue at or about the end of each month, and specifying the amount of salary paid him for each month during the time of his said incumbency in such office. It is further alleged that said Atterberry at no time accounted for the fees which he received in his official capacity for such services, but had neglected and refused to account therefor, and failed to pay or cause the same to be paid to the county of Williams as required by law at any time, but had converted to his own use and still retained the same, and that the amount thereof so collected and retained by said Atterberry aggregated about $1,500.

Facts are then recited showing that the board of county commissioners had failed, neglected, and refused, though demanded, to adjust the accounts of said Atterberry as to such fees, or to ascertain the balance due the county arising therefrom, and had refused to order suit brought against said Atterberry for the fees retained by him above the amount authorized by law. Facts are further pleaded, showing that the attention of the board had been called to the delinquency of the auditor, and their refusal to ascertain the amount of such excess of fees so collected and retained, and to order suit brought in the name of the county therefor, although they knew that the auditor had been paid the full amount of his salary and that such fees had been received in excess of his salary as limited by law. It is then alleged that relator has no plain, speedy, and adequate remedy at law to protect his rights

as a taxpayer and resident of the state of North Dakota and the county of Williams, or the rights of the other taxpayers of such county, unless such board of county commissioners performs its duty in the matter as required by law. A writ was prayed for requiring such county commissioners to adjust the accounts of said county auditor as to any and all amounts received by him in his official capacity for certifying to deeds and abstracts, and to ascertain the balance due the county, and to order suit to be brought in the name of the county therefor, and to do and perform all other things with reference thereto required by law. Other facts are alleged which are immaterial to an understanding of this appeal. The application was heard by Honorable A. G. Burr, special judge, when a demurrer was interposed to the order to show cause and the affidavit in support thereof, on the ground and for the reason that the affidavit did not state facts sufficient to constitute a cause of action, or sufficient upon which to base a writ of the court. The court, by order duly entered bearing date the 29th of June, 1911, sustained the demurrer. From this order an appeal was duly taken to this court.

*Geo. A. Bangs* and *Geo. R. Robbins* file brief of points and authorities on behalf of the state association of county auditors, and by permission of the court.

Mandamus is not the proper remedy. The relator is not a party beneficially interested. People ex rel. Bartlett v. Busse, 238 Ill. 593, 28 L.R.A.(N.S.) 246, 87 N. E. 840; State ex rel. Hawes v. Brewer, 39 Wash. 65, 109 Am. St. Rep. 858, 80 Pac. 1001, 4 Ann. Cas. 197; Lewright v. Love, 95 Tex. 157, 65 S. W. 1089; 26 Cyc. 402; Harrell v. Lynch, 65 Tex. 146; Sweet v. Smith, 153 Mich. 674, 117 N. W. 59; Van Horn v. State, 51 Neb. 232, 70 N. W. 941; Nickelson v. State, 62 Fla. 247, — L.R.A.(N.S.) —, 57 So. 194; Union P. R. Co. v. Hall, 91 U. S. 343, 355, 23 L. ed. 428, 432; Chicago & A. R. Co. v. Suffern, 129 Ill. 282, 21 N. E. 824.

The acts sought to be coerced are discretionary, and hence mandamus will not lie. Looscan v. Harris County, 58 Tex. 511; Kerby v. Clay County, 71 Kan. 683, 81 Pac. 503; People ex rel. Damron v. McCormick, 106 Ill. 184; Lewright v. Love, 95 Tex. 157, 65 S. W. 1089; Lewright v. Bell, 94 Tex. 556, 63 S. W. 623; Board of Education

v. Cherokee County, 150 N. C. 116, 63 S. E. 724; Ward v. Beaufort County, 146 N. C. 534, 125 Am. St. Rep. 489, 60 S. E. 418; Glenn v. Moore County, 139 N. C. 412, 52 S. E. 58; People ex rel. Bartlett v. Busse, 238 Ill. 593, 28 L.R.A.(N.S.) 246, 87 N. E. 840; State ex rel. Hawes v. Brewer, 39 Wash. 65, 109 Am. St. Rep. 858, 80 Pac. 1001, 4 Ann. Cas. 197; State ex rel. Rosbach v. Pratt, 68 Wash. 157, 122 Pac. 987; Boyne v. Ryan, 100 Cal. 265, 34 Pac. 707; Everding v. McGinn, 23 Or. 15, 35 Pac. 178; Lamb v. Webb, 151 Cal. 451, 91 Pac. 102, 646; State ex rel. Moody v. Barnes, 25 Fla. 298, 23 Am. St. Rep. 516, 5 So. 722; Wailes v. Smith, 76 Md. 469, 25 Atl. 922; Kerr v. Superior Ct. 130 Cal. 183, 62 Pac. 479; Fuller v. University & S. Lands, 21 N. D. 212, 129 N. W. 1029; 13 Enc. Pl. & Pr. 497; Huntington v. Nicoll, 3 Johns. 566; State ex rel. Ellis v. Board of Revenue, 172 Ala. 190, 55 So. 179; Jackson v. Cochran, 134 Ga. 396, 67 S. E. 825, 20 Ann. Cas. 219; State ex rel. Romano v. Yakey, 43 Wash. 15, 85 Pac. 990, 9 Ann. Cas. 1071; 19 Am. & Eng. Enc. Law, 724; State ex rel. Ellis v. Board of Revenue, 172 Ala. 190, 55 So. 179; Drew v. Madison, 146 Iowa, 721, 125 N. W. 815; Norris v. Cross, 25 Okla. 287, 105 Pac. 1000; McAlester-Edwards Coal Co. v. State, 31 Okla. 629, 39 L.R.A.(N.S.) 810, 122 Pac. 194.

The remedy, if any there be, is the prosecution or removal of the officers. Rev. Codes 1905, §§ 9101, 9104 & 9498; Ward v. Beaufort County, 146 N. C. 534, 125 Am. St. Rep. 489, 60 S. E. 418; Glenn v. Moore County, 139 N. C. 412, 52 S. E. 58.

The true interpretation of the 1907 enactment authorizes and permits the county auditors to retain the fees provided by law to be collected by them, up to the maximum of their compensation allowed by law as salary. Rev. Codes 1905, § 2592; Sess. Laws 1907, chap. 70; 34 Cyc. 1826; 7 Words & Phrases, 6287; 18 Cyc. 462; 3 Words & Phrases, 2712.

Repeals by implication are not favored. Reeves v. Bruening, 16 N. D. 398, 114 N. W. 313.

Where statutes are irreconcilable or wholly repugnant, the later enactment will prevail. State v. Cooper, 18 N. D. 583, 120 N. W. 878.

When two acts are passed by the same session of the legislature, touching the same subject-matter, there is a strong presumption against

implied repeal. 36 Cyc. 1086; 1 Lewis's Sutherland, Stat. Constr. § 268; State ex rel. Hay v. Hindson, 40 Mont. 353, 106 Pac. 362; Tampa v. Prince, 63 Fla. 387, 58 So. 542; State ex rel. Scholl v. Duncan, 162 Ala. 196, 50 So. 265; Southern P. Co. v. Sorey, 104 Tex. 476, 140 S. W. 334; State ex rel. Hendricks v. Marion County, 170 Ind. 621, 85 N. E. 513.

A general law will not impliedly repeal a special law, unless the terms of the two acts are absolutely repugnant and cannot be reconciled. 36 Cyc. 1087; Reeves v. Bruening, 16 N. D. 398, 114 N. W. 313; Birmingham v. Southern Exp. Co. 164 Ala. 529, 51 So. 159; State ex rel. Metcalf v. Baker, 114 Minn. 209, 130 N. W. 999; Wilson v. Edwards County, 85 Kan. 422, 116 Pac. 614; Greenbush Cemetery Asso. v. Van Natta, 49 Ind. App. 192, 94 N. E. 899.

The settled and contemporaneous construction placed upon a statute has great and persuasive weight, even though not controlling. 36 Cyc. 1136; Cooley, Const. Lim. 81, 86; Lewis's Sutherland, Stat. Constr. §§ 472 et seq.; State ex rel. Edgerly v. Currie, 3 N. D. 317, 55 N. W. 858; Garr, S. & Co. v. Sorum, 11 N. D. 174, 90 N. W. 799; United States v. Hill, 120 U. S. 169, 30 L. ed. 627, 7 Sup. Ct. Rep. 510; United States v. Finnell, 185 U. S. 236, 46 L. ed. 890, 22 Sup. Ct. Rep. 633; VanVeen v. Graham County, 13 Ariz. 167, 108 Pac. 252; Copper Queen Consol. Min. Co. v. Territorial Bd. of Equalization, 9 Ariz. 383, 84 Pac. 511; Douglas County v. Vinsonhaler, 82 Neb. 810, 118 N. W. 1058; State ex rel. Reardon v. Hooker, 26 Okla. 460, 109 Pac. 527; State ex rel. Bashford v. Frear, 138 Wis. 536, 120 N. W. 216, 16 Ann. Cas. 1019; Price v. Lancaster County, 189 Pa. 95, 41 Atl. 987; Auditor v. Cain, 22 Ky. L. Rep. 1888, 61 S. W. 1016; Harrison v. Com. 83 Ky. 162; Ewing v. Vernon County, 216 Mo. 681, 116 S. W. 518; State v. Brady, — Tex. Civ. App. —, 114 S. W. 895; Kelly v. Multnomah County, 18 Or. 356, 22 Pac. 1110; Brown v. Foster, 88 Me. 49, 31 L.R.A. 116, 33 Atl. 662; Bloxham v. Consumers' Electric Light & Street R. Co. 36 Fla. 519, 29 L.R.A. 507, 51 Am. St. Rep. 44, 18 So. 444; People v. Adelphi Club, 149 N. Y. 5, 31 L.R.A. 510, 52 Am. St. Rep. 700, 43 N. E. 410; Bernard v. Benson, 58 Wash. 191, 137 Am. St. Rep. 1051, 108 Pac. 439; Com. ex rel. Lewis v. Paine, 207 Pa. 45, 56 Atl. 317; Smith v. Bryan, 100 Va. 199, 40 S. E. 652; Matz v. Chicago & A. R. Co. 85 Fed. 180; Collins

v. Henderson, 11 Bush, 74; State v. Rutland R. Co. 81 Vt. 508, 71 Atl. 197; State ex rel. Platte County v. Sheldon, 79 Neb. 455, 113 N. W. 208; State v. Davis, 62 W. Va. 500, 14 L.R.A.(N.S.) 1142, 60 S. E. 584; State v. Northern P. R. Co. 95 Minn. 43, 103 N. W. 731; Rohrer v. Hastings Brewing Co. 83 Neb. 111, 119 N. W. 27, 17 Ann. Cas. 998; Edwards v. Darby, 12 Wheat. 206, 6 L. ed. 603; United States v. Moore, 95 U. S. 760, 24 L. ed. 588; Hahn v. United States, 107 U. S. 402, 27 L. ed. 527, 2 Sup. Ct. Rep. 494; Brown v. United States, 113 U. S. 568, 28 L. ed. 1079, 5 Sup. Ct. Rep. 648; United States v. Philbrick, 120 U. S. 52, 30 L. ed. 559, 7 Sup. Ct. Rep. 413; United States v. Johnston, 124 U. S. 236, 31 L. ed. 389, 8 Sup. Ct. Rep. 446; Robertson v. Downing, 127 U. S. 607, 32 L. ed. 269, 8 Sup. Ct. Rep. 1328; Schell v. Fauché, 138 U. S. 562, 34 L. ed. 1040, 11 Sup. Ct. Rep. 376; Pennoyer v. McConnaughy, 140 U. S. 23, 35 L. ed. 370, 11 Sup. Ct. Rep. 699; United States v. Alabama G. S. R. Co. 142 U. S. 615, 35 L. ed. 1134, 12 Sup. Ct. Rep. 306; 36 Cyc. 1151; 2 Lewis's Sutherland, Stat. Constr. p. 890; Harrington v. Smith, 28 Wis. 43.

*H. W. Braalelien,* for appellant.

The fees collected by county auditors, for certifying to abstracts, deeds, etc., belong to their respective counties. Rev. Codes 1905, § 2592; Sess. Laws 1907, chap. 70, p. 96; Rev. Codes 1905, § 1597; Sess. Laws 1907, p. 351.

Courts must construe a given statute with reference to and in connection with all other provisions of statute law bearing upon the same subject-matter. Wishek v. Becker, 10 N. D. 63, 84 N. W. 590; Finch v. Armstrong, 9 S. D. 255, 68 N. W. 741.

Repeals by implication are not favored. State ex rel. Berry v. Babcock, 21 Neb. 599, 33 N. W. 247.

Such statutes should not be construed in an antagonistic manner, unless such is the clear intent of the legislature. Sutherland, Stat. Constr. 287; 26 Am. & Eng. Enc. Law, 721; Reeves v. Bruening, 16 N. D. 402, 114 N. W. 313; People v. Thompson, 161 Mich. 391, 126 N. W. 466; State ex rel. Berry v. Babcock, 21 Neb. 599, 33 N. W. 247.

The intention of the legislature governs. State ex rel. Erickson v. Burr, 16 N. D. 591, 113 N. W. 705; Sutherland, Stat. Constr. 2d ed.

§ 623; Shellenberger v. Ransom, 41 Neb. 631, 25 L.R.A. 564, 59 N. W. 935.

Repeals by implication are, however, recognized as intended by the legislature, and its intention to repeal is ascertained in other respects, when not expressly declared, by construction. State ex rel. Flaherty v. Hanson, 16 N. D. 347, 113 N. W. 371; State v. Minneapolis & N. Elevator Co. 17 N. D. 23, 138 Am. St. Rep. 691, 114 N. W. 482; Atty. Gen. v. Railroad Comrs. 117 Mich. 477, 76 N. W. 69; State v. Cooper, 18 N. D. 583, 120 N. W. 878; Sutherland, Stat. Constr. 2d ed. 461.

Where statutes are wholly repugnant and cannot be harmonized, the last legislative expression governs. Iowa Sav. & L. Asso. v. Heidt, 107 Iowa, 297, 43 L.R.A. 689, 70 Am. St. Rep. 197, 77 N. W. 1050; Busby v. Riley, 6 S. D. 401, 61 N. W. 165; State ex rel. Excelsior v. District Ct. 107 Minn. 437, 120 N. W. 894; State v. Omaha Elevator Co. 75 Neb. 637, 106 N. W. 984, 110 N. W. 874, authorities cited; Ex parte Sohncke, 148 Cal. 262, 2 L.R.A.(N.S.) 817, 113 Am. St. Rep. 236, 82 Pac. 956, 7 Ann. Cas. 475; Rohrer v. Hastings Brewing Co. 83 Neb. 111, 119 N. W. 27, 17 Ann. Cas. 998; First Nat. Bank v. Lewis, 18 N. D. 390, 121 N. W. 836; State v. Cooper, 18 N. D. 583, 120 N. W. 878.

It is the duty of the county commissioners to audit and adjust the accounts of delinquent county officers, and they may be compelled to do so. Clay County v. Simonsen, 1 Dak. 403, 46 N. W. 593; Jerauld County v. Williams, 7 S. D. 196, 63 N. W. 906.

An action may be maintained for such purpose by the state's attorney. Kerby v. Clay County, 71 Kan. 683, 81 Pac. 503; Tehama County v. Sisson, 152 Cal. 167, 92 Pac. 68; Santa Cruz County v. McPherson, 133 Cal. 282, 65 Pac. 574.

Where a particular method of procedure is fixed by statute, it is exclusive. Hudson v. Jefferson County Ct. 28 Ark. 359; Sutherland, Stat. Constr. §§ 392, 393, 454; State ex rel. Hickory County v. Dent, 121 Mo. 162, 25 S. W. 924.

County commissioners, upon ascertaining delinquencies in other county officers, must report same to state's attorney. Rev. Codes 1905, § 2430; Marion County v. Phillips, 45 Mo. 75; State ex rel. Christian County v. Gideon, 158 Mo. 327, 59 S. W. 102, and cases cited.

SPALDING, Ch. J. The relator filed a brief and appeared in person on the argument in this court. The defendants neither appeared nor filed a brief, but Mr. George A. Bangs, an attorney of Grand Forks county, made application for leave to submit a brief on behalf of the state auditors' association, whatever that may be, and he was permitted to do so, and we refer to and consider his brief the same as though it had been filed in behalf of respondents. He makes certain preliminary objections to a consideration of the matter, which will be disposed of before we turn to the question of whether the county or the auditor is entitled to the fees in question.

1. He asserts that the relator is not a party beneficially interested as required by § 7823, Rev. Codes of 1905, and therefore cannot maintain this proceeding. He argues that the acts sought to be compelled are governmental functions in which no one citizen has any beneficial interest or is directly affected. We have carefully examined the authorities he cites, but this question has been passed upon repeatedly by this court, and the relator, as a resident, citizen, and taxpayer of the county is qualified to act as a relator in this proceeding.

If the duty enjoined by the statute upon the county commissioners to audit or adjust the accounts of the auditor includes auditing or adjusting the items composed of fees received for certifying to abstracts and deeds, it is a public duty and one in which all the taxpayers of the county are interested. State ex rel. McDonald v. Holmes, 19 N. D. 286, 123 N. W. 884; State ex rel. Davis v. Willis, 19 N. D. 209, 124 N. W. 706; State ex rel. Schilling v. Menzie, 17 S. D. 535, 97 S. W. 745; State ex rel. Dakota Hail Asso. v. Carey, 2 N. D. 36, 49 N. W. 164; 26 Cyc. 404 (II) and authorities cited; 26 Cyc. 407, note, as to taxation; Union P. R. Co. v. Hall, 91 U. S. 343, 23 L. ed. 428; State ex rel. Romano v. Yakey, 43 Wash. 15, 85 Pac. 990, 9 Ann. Cas. 1071.

2. It is urged that the acts sought to be coerced are discretionary and that hence mandamus will not lie. Sec. 2428, Rev. Codes of 1905, reads: "All treasurers, sheriffs, clerks, constables, and other officers chargeable with money belonging to any county, shall render their account to and settle with the county commissioners at the time required by law, and pay into the county treasury any balance which may be due the county. . . ."

Section 2430 reads: "If any person thus chargeable shall neglect or refuse to render true accounts or settle as aforesaid, the board of county commissioners shall adjust the accounts of such delinquent according to the best information it can obtain, and ascertain the balance due the county, and order suit to be brought in the name of the county therefor; and such delinquent shall not be entitled to any commission, and shall forfeit and pay to the county a penalty of 20 per cent on the amount of funds due the county."

We are now dealing with the act of adjusting the accounts of the auditor as they relate to the fees in question. It should be observed that the statute provides that if a person chargeable shall neglect or refuse to render true account, or settle, the board shall adjust the accounts of the delinquent. We are not concerned with how they shall be adjusted, that is, we are not permitted to determine that any specific sum is due, or that the commissioners shall find any sum due in case the facts alleged in the petition of the relator are found to be untrue; but on the facts as stated it is the ministerial duty of the board to examine and adjust those accounts, including the items in question, if the items belong to the county rather than to the auditor. The only thing required of the commissioners is the ministerial duty of acting upon the facts set forth in the petition and which are alleged to be within their knowledge, namely, that there are such items and that they have not been accounted for, and to proceed to make an accounting or an adjustment, and thereby determine, according to the best information they can obtain, the amount of such items unaccounted for and unpaid to the treasurer, if any.

While it is true that the subject of the controversy pertains to the fiscal affairs of the county, yet this does not alter the situation when the board refuses to perform its ministerial duty. The terms of the statute quoted above are mandatory. The taxpayers of the county are entitled to know, and the legislature contemplated that they should be informed, as to the amount of fees collected and unaccounted for, and while the courts cannot direct the findings of the board they can set the commissioners in motion by directing them to proceed and investigate and ascertain by computation whether anything is due, and if so how much of the county's property has been retained by the auditor.

26 N. D.—7.

Many authorities are cited by respondent on this subject, but not one of them sustains his argument. They go to the effect that the court cannot direct the board to find a specific or definite amount due. We think they are uniform to the effect that courts may set the board in motion. We shall not review the authorities cited, but will say that People ex rel. Damron v. McCormick, 106 Ill. 184, is illustrative. It rests on facts practically parallel with those in the instant case, but it was there sought to compel a specific result, while here, in so far as the accounting is concerned, it is only sought to set the board in motion by requiring it to perform the acts which may result in finding something or nothing due. See 26 Cyc. 161; State ex rel. Heffron v. District Ct. ante, 32, 143 N. W. 143; Stephens v. Jones, 24 S. D. 97, 123 N. W. 705. In fact this proposition is so elementary that citation of authorities is unnecessary.

3. It is next urged that the writ will not lie, because there are other adequate remedies provided by statute, *viz.,* those authorizing proceedings for the removal of officials who fail to perform their duties; and criminal prosecution. We think counsel labors under a misapprehension of what is meant by other adequate remedy. The provisions for the removal of officials and for criminal prosecution furnish no remedy whatever to the taxpayers or to the public for the diminution of the funds of the county. They simply serve as a warning, and tend to prevent a recurrence of the neglect or refusal, and to punish the officials for their dereliction. Such proceedings would not replenish the public treasury nor provide additional funds for conducting the public business, nor would they diminish the taxes assessable against the property of the taxpayers of the county. They furnish, in a measure, a remedy for the crime committed, if any, but no civil remedy. Hence we say they furnish no remedy in the statutory sense; and, if doubt exists, that doubt should be resolved in favor of the solution of the question which will afford a remedy. 19 Am. & Eng. Enc. Law, 747; State ex rel. Cutter v. Kamman, 151 Ind. 407, 51 N. E. 483; 26 Cyc. 173; Temple v. Superior Ct. 70 Cal. 211, 11 Pac. 699.

Kerr v. Superior Ct. 130 Cal. 183, 62 Pac. 479, is cited as an authority, but we deem the dissenting opinion of the chief justice and Judge Temple to state the better reasons. In any event, the reasons given in the majority opinion, if in point, are in conflict with

our conclusions in State ex rel. Heffron v. District Ct. ante, 32, 143 N. W. 143.

Both parties devote considerable space to attempting to establish that the state's attorney can only bring an action against the auditor on the facts alleged, when directed by the county commissioners so to do. They agree on this question; hence we do not examine it, and express no opinion thereon further than to say that this is apparently in accord with the statute and seems to be supported by authority. See §§ 2428 and 2430, Rev. Codes of 1905, supra; Kerby v. Clay County, 71 Kan. 683, 81 Pac. 503; Looscan v. Harris County, 58 Tex. 511; State ex rel. Rosbach v. Pratt, 68 Wash. 157, 122 Pac. 987.

We now approach the important question in this case, viz., to whom do the fees collected by the auditor for certifying to deeds and abstracts belong? Are they the property of the county or of the auditor? The difficulty in determining this question arises largely from the apparent conflict between the provisions of chap. 70, Laws of 1907, and chap. 219, enacted at the same session of the legislature. While chapter 70 precedes chapter 219 in the published laws of that session, this is purely accidental, and in no manner indicates which was intended to take precedence. The chapters in the laws of that session are numbered and arranged alphabetically with reference to subject-matter, and chapter 70 is under the title, as arranged, of "County Officers," while chapter 219 is under the title of "Revenue and Taxation." In fact, chapter 219 was introduced and passed prior to the passage of chapter 70, and likewise was approved before the approval of chapter 70, the latter having been approved by the governor on the 14th of March, 1907, while chapter 70 was not approved until March 19; 1907. Neither chapter contains any emergency clause. Chapter 219 is entitled, "Requirements of Tax Deeds," and is an act to amend § 1597 of the Revised Codes of 1905 relative to the duties of county auditors, and requires such auditor, when any deed is presented to him for transfer, to ascertain from the books and records of his office whether there are any delinquent taxes, special assessments, or tax sales on the land covered by the deed, and prescribing the certificate which the auditor is required to make on such deed as applicable to the facts found, viz., that he shall enter on every deed of real property so transferred over his official signature, "delinquent taxes and special assess-

ments or instalments of special assessments paid and transfer entered," or "paid by sale of the land described within," or "transfer entered," whichever may be applicable to the facts found. It also prescribes the duties of the register of deeds, requiring him to refuse to receive or record a deed unless the proper certificate is first obtained from the auditor. It also provides penalties for failure to comply with the law, and makes exceptions of United States patents and some other forms of transfer from these requirements. The last sentence reads: "The county auditor shall keep a record of such transfers in a book kept for that purpose, showing the names of the grantor and grantee, a description of the property and the date of transfer, *and shall receive 25 cents for each certificate, from the person or persons presenting the same for certification, and said auditor may retain such fee as compensation for making such certificate."* The purpose of this statute, like others referred to, was to secure the payment of taxes, rather than to increase the compensation of the auditors. Section 1597, of which this is an amendment, contained the same provision relating to this fee and was enacted in 1903 by chapter 167 of the laws of that year: "To provide that all taxes and assessments shall be paid before transfer of property," which, when so enacted, was an amendment of § 1278 of the Revised Codes of 1899, relating to "deeds not to be recorded without auditor's certificate of taxes paid." And this act, which is chap. 144, Laws of 1901, contained the same provision permitting the auditor to retain such fee.

Sec. 1278, Rev. Codes of 1899, was enacted as chapter 135 of the Laws of 1899, the subject of which was, "Auditor's Certificate Required," and was an amendment to chapter 126 of the Laws of 1897. This chapter 135 concludes with this provision: "The county auditor shall keep a record . . . and shall receive 25 cents for each certificate from the person or persons presenting the same for certification, and shall cover the same into the county treasury for the credit of the county general fund; provided, in counties in which the auditor is not paid the maximum salary allowed by law, said auditor may retain such fee as compensation for making such certificate." Chap. 135, Laws of 1899, was enacted to amend § 95 of chapter 126 of the laws of 1897, which contained the unqualified requirement that the auditor should cover the fee into the treasury for the credit of the general fund, and

such section was contained in the general law relating to revenue and taxation enacted by that session of the legislature, and repealing all acts or parts of acts in conflict therewith. Prior to 1897, by chap. 113, Laws of 1893, the auditor had been permitted to collect and retain this fee, as he had been by § 91, chap. 132, Laws of 1890; but by chapter 52 of Laws of 1889 he had been required to turn all fees into the county treasury received in excess of the salary provided by that chapter, based on a percentage of the assessed valuation; and to the same effect was § 14 of chapter 10 of the Laws of 1887, which was the first general law providing for the compensation of county auditors. The law providing for certifying to abstracts was enacted as chap. 1, Laws of 1901, and provided a fee of 25 cents, but contained no provision permitting him to retain it. When that chapter was enacted chapter 56 of the Laws of 1899 was in effect, which chapter prescribed the salary of county auditors and contained no provision regarding fees. So much for the history of the legislation regarding fees for the certificates relating to deeds, to which we shall have occasion to refer later.

Chapter 70 of the Laws of 1907, heretofore referred to and here in question, is entitled "Salary of County Auditor," and provides that "the salary of the county auditor shall be regulated by the value of the property in his county as fixed by the state board of equalization for the preceding year, as follows: Provided that no county auditor shall receive more than $1,200 for his personal services in any one year in counties where the valuation of taxable property is less than $1,500,000, nor more than $1,400 in counties where the assessed valuation exceeds $1,400,000, but does not exceed $2,000,000."

Then follow provisions like the last, increasing the salary between certain valuations in counties of higher valuation until the last provision is reached, which is: "Nor more than $2,500 in counties where the assessed valuation exceeds $12,000,000; and all moneys received as fees for certifying to abstracts or deeds in excess of the salary as limited by this article shall be paid by the county auditor at the end of each month into the revenue fund of the county."

It thus appears that chapter 70 contains no positive declaration of the amount of salary that any auditor shall receive, the only statement on the subject being the one quoted, under the proviso providing

for a maximum only. A brief reference to the history of legislative provisions for the compensation of county auditors and the salaries provided will aid somewhat in ascertaining the meaning of this chapter and its relation to chapter 219, supra.

The Revised Codes of 1877 provided for no officer known as the county auditor, but by §§ 61 to 64 of chapter 21 of the Political Code it imposed upon the register of deeds the duties, *ex officio,* of county clerk, which duties were later transferred to the office of the county auditor, and are those now performed by that official. The compensation for the county clerk was fixed by § 8 of chapter 39 of the Political Code of 1877. That section, as far as material, reads: "For performing the duties of the clerk of the county commissioners and attending to the business of the county, the county clerk shall receive such salary per annum, to be paid by the county quarterly, as the commissioners of the county shall allow, not exceeding in any year the sum of $600." In 1883, by chap. 1, Special Laws of that year, the office of county auditor was created for Pembina, Walsh, Grand Forks, Lincoln, Traill, Cass, and Richland counties, and the duties formerly performed by the county clerk were transferred in those counties to the auditor. Sec. 14 fixes their salaries as follows: "The salary of the county auditors shall be regulated by the value of the property in their respective counties as fixed by the territorial board of equalization for the preceding year as follows: In counties where the amount of assessable property does not exceed the sum of one and one-half million dollars they shall be entitled to receive 5 mills, on each dollar of the first $100,000, and 1 mill on each dollar of all amounts in excess of said last-named sum, and less than $200,000, and one tenth of one mill on each dollar of all amounts in excess of said last-named sum; in counties where the value of taxable property for the preceding year, as fixed by the said board of equalization, exceeds the sum of one and one-half million dollars the county auditor shall be entitled to receive 5 mills on each dollar of the sum of the first $100,000, and $\frac{1}{3}$ of 1 mill on each dollar in excess of such sum and less than $2,000,000, and $\frac{1}{2}$ of 1 mill on each dollar of all sums in excess thereof; . . . provided that no county auditor shall receive more than $1,500 for his personal services in counties where the valuation does not exceed $4,000,000, nor more than $2,000 for his personal services in counties where the

valuation does exceed $4,000,000, and does not exceed $6,000,000; nor more than $2,500 in counties where such valuation exceeds $8,000,000, and does not exceed $10,000,000; nor more than $3,000, where such valuation exceeds $10,000,000; *and all moneys received as fees or percentage in excess of the amounts provided for in this act shall be paid by the auditor at the end of each year into the revenue fund of the county.*"

Section 16 provided that whenever the term "county clerk" occurred in any of the existing laws of the territory, it should be deemed and held synonymous with, and construed to mean, county auditor. Here we have the foundation for the phraseology of most of the enactments relative to the fees received by county auditors down to and including the session of 1907, and it is clear to the members of this court that the meaning of that statute was that the county auditors of the counties first mentioned constituted one class, namely those where taxable property did not exceed $4,000,000; the second class was all having property between $4,000,000 and $6,000,000. In the first class the county auditor received a salary not to exceed $1,500, and if the percentage on the valuation did not amount to $1,500, then he was entitled to retain moneys received as fees sufficient to make his salary $1,500, and any excess of fees over that sum was to be turned into the revenue fund of the county. In the last class he was entitled to retain such fees sufficient to bring his salary up to $3,000; if the percentage amounted to less than that sum. Above $3,000, it was to be turned into the revenue fund, but no auditor in the last class could receive, for himself, to exceed $3,000, regardless of valuation or amount of fees.

The next legislation on the subject is found in the Laws of 1885, when the legislature, by chapter 2 of Special Laws, provided for auditors of Brown and certain other counties; and by chap. 37, Special Laws of that year, auditors were provided for Spink, Stutsman, and other counties, and the law creating the office of county auditor for the counties of Pembina, etc., above referred to, was made to apply to the auditors of the counties of Spink, etc. Thus stood the law until 1887, certain counties having auditors and others being without them, with their duties performed by the register of deeds under the title of county clerk. By chap. 10, Laws of 1887, a general law, the office

of county auditor was created and his duties defined. Sec. 14 of the act fixed the salary, the language employed being the same as that in the act establishing the office in Pembina and other counties, but it reduced the maximum salary to $2,000, and contained the same proviso requiring the fees or percentage in excess of the amounts named as the maximum to be paid into the revenue fund of the county at the end of each year. It is likewise clear that this proviso applied to each class of counties established in the act, separately, that is to say, of one class no auditor could receive to exceed $1,500 per annum; in the other class he could not receive to exceed $2,000; and the excess of fees and percentages, after he retained enough to amount to the maximum for his class, was to be turned into the county revenue fund. The same phraseology and arrangement of the provisions on this subject were carried into the law of 1889. From a knowledge of contemporaneous history and conditions existing during the eighties, we may say with assurance that the reason for the provision that they turn into the revenue fund *the excess* of fees, and percentages received over their salary instead of being required to account for them monthly or otherwise, was to enable the auditor to receive a portion of his compensation in cash. During those years the warrants of most counties in the territory were considerably below par. The treasuries were empty, and generally warrants could not be paid until many months, and those of some counties several years, after issuance. By employing this phraseology the legislature permitted the auditors to receive the benefit of at least part cash for their services. This condition changed later, and a corresponding change was made requiring the accounting to be made monthly instead of yearly. By chap. 52, Laws of 1891, chap. 50, Laws of 1887, which had regulated the salaries of registers of deeds and treasurers of counties, and permitted the register of deeds to retain fees received for making and certifying to abstracts, was repealed, as was § 14 of chapter 10, relating to auditors. The phraseology of the provisions of § 1, fixing the salaries of county auditors, was similar to the preceding enactments on the subject, but here a change occurred in the proviso which we need not interpret here. It was provided that he should not be required to account for fees for certifying to deeds, and further that all fees received by such officer, "in excess of the above provisions in this act, shall be paid into the salary fund of

the county at the end of each month." By chap. 56, Laws of 1899, the salary of the county auditor was again changed. The phraseology was also changed and the section read, in part: "The salary of the county auditor shall be regulated by the value of the property in his county as fixed by the state board of equalization for the preceding year as follows: He shall be entitled to receive not to exceed $750 in counties where the assessed valuation does not exceed $500,000." Then followed increases in salary for counties with greater valuations, and last: "Two thousand dollars in counties where the assessed valuation exceeds $9,000,000, provided that no county auditor shall receive for his personal services an amount to exceed $2,000 in any one year."

At the same session, chapter 135, relating to the auditors' certificate to deeds, was enacted, to which we have heretofore made reference. The law fixing this salary seems not to have again been changed until the enactment of chap. 70, Laws of 1907, above referred to and here under consideration. After long consideration and careful investigation of the subject in an attempt to harmonize chapter 70 and chapter 219, supra, we have reached the conclusion that the peculiar phraseology of chapter 70 was undoubtedly employed by the legislature by reason of having overlooked some of the changes made previously in the method of computing the auditor's salary, and we conclude that the phrase: "No county auditor shall receive more than  . . .  dollars for his personal services in any one year in counties where," etc., can, as the correlated laws now stand, only be construed as fixing the salary of the auditor in each county of the valuation by which his county is classified at the sum named, no more and no less. For instance where the valuation is less than $1,500,000, his salary is $1,200 per annum, and the maximum salary of $2,500 is the salary fixed for counties in which the assessed valuation exceeds $12,000,000.

We have thus given a history of the legislation, perhaps at greater length than is necessary, but because when act is compared with act we think it throws some light on the meaning of chapter 70, supra. It will be seen that the duties of the office of auditor were first performed by the register of deeds. His salary was fixed by the board of county commissioners. Then the duty was transferred to the newly created office, and the salary was at first based on a percentage of the assessed valuation, and later the valuation was employed only for the purpose of classifying the counties with reference to salary, and an

arbitrary salary was fixed for the counties of each separate class. Legislation on the subject was undoubtedly enacted without any member having performed the burdensome task of tracing the origin of the phraseology of the statute which he was seeking to amend, or the application of such phraseology. They unquestionably assumed that it had a special and correct application in the law amended, and no retrospective examination was made.

Now what effect, if any, does chapter 219, supra, have upon the provision of chapter 70, requiring the fees mentioned to be paid into the revenue fund of the county at the end of each month? It is elementary that when two laws relating to the same subject-matter are passed at the same legislative session they are to be construed together, if possible, so as to give effect to each, but if the two laws are irreconcilable the one which is the later expression of the legislative will must prevail. The provisions in question clearly conflict, and as clearly cannot be harmonized within the limits of any rule of reason. This being apparent, which provision controls? Chapter 219, first enacted, as we have indicated, relates to the duties of the county auditor in certifying to the payment or nonpayment of taxes on deeds offered for record. The prime subject of the chapter is the requirement that there be such certificate. The object was to compel the payment of taxes. The permission given the auditor to retain the 25 cents fee is the last paragraph of the chapter, and is only incidental to the main purpose of the law. There is nothing in the chapter indicating that the object of its enactment was to either increase or diminish the compensation received by county auditors. It is a general law, dealing with a specific subject; namely, requiring the certificate of the auditor to deeds before they can be entitled to record. Chapter 70 is a general law fixing the salaries of county auditors. It is general in the sense that it applies to all county auditors, but it deals with only a specific subject. That subject is the salary of the county auditor. The purpose of its enactment was to readjust the salaries of county auditors, while the purpose of the legislature in enacting chapter 219 was to further regulate the requirements necessary to entitle a deed to record, by that means compelling the payment of taxes before the transfer of lands, and serving as an aid in the collection of taxes.

It is also elementary that a statute, special in the sense that it deals

with one subject only, will control over the terms of another conflicting statute in which the conflicting subject is only incidentally treated, and having some other main object.  We think this has some bearing on the construction of these statutes, and tends to indicate that the provisions of chapter 70 govern as against those of chapter 219, but there are other reasons why this seems clear.  That there is a conflict cannot be questioned.  Chapter 70 was the later enactment.  The body of this chapter increased the salaries of county auditors, and the last clause deprived them of the fees in question.  To say nothing about the reasonable probability that the legislature did not intend to both increase their salaries and give them the fees, but rather figured that the increase was adequate, it is clear that the later enactment, in view of the conflict, must control, and repeals the repugnant provision of the earlier statute. This question has been so recently discussed and decided by this court that we need not make further reference to authorities.  See State v. Cooper, 18 N. D. 583, 120 N. W. 878.  The character of this legislation is such that this rule must overcome any presumption against an implied repeal.  When chapter 219 was introduced and passed, the subject of an increase in the salaries of the auditors was not before the legislature, and it is reasonably certain, considering the history of the two bills, that when chapter 70 was considered, the legislature intended to make a flat raise of the salaries of the auditors, and pursue the policy followed by the legislature generally in recent years, of putting officers onto a flat salary and turning all fees over to the state or the county, as the case might be.  This is the most reasonable interpretation to place upon the acts of the legislature, viewed in the light of the history of the two bills when before the legislature.  Undoubtedly when chapter 70 was considered by the committee and reported, and later when it was passed, the two houses had under consideration the fact that chapter 219, previously passed, had given the auditors the fees.  When chapter 219 was under consideration the subject of a flat increase in the salaries of auditors had not been considered; in fact the bill for chapter 70 was only introduced the day prior to the final passage of chapter 219, and was not reported by the committee for a week or more thereafter.

But it is urged that a proper construction of chapter 70, if repugnant to chapter 219, permits the auditor in any class of counties to retain the fees until they increase his salary to the amount allowed in the class

of counties having the highest valuation, or in other words, to collect the maximum salary provided in the chapter. While the language is not entirely clear standing by itself, yet, from a consideration of the whole act and the other legislation on the subject, we think it very clear that each class of counties is to be considered and treated by itself; that the maximum salary referred to means the salary of the class of counties fixed by the valuation to which that maximum is applied. In other words, the last phrase of the section is employed to limit the compensation of an auditor in any class of counties to the sum fixed in that class. It does not mean that each auditor in each class of counties except the last shall be entitled to retain fees until they raise his salary to the sum of $2,500, the amount fixed for counties of the highest valuation. Such a construction would be absurd. It might result in giving the auditor of the county having the smallest valuation, and in which the smallest salary is prescribed, the same compensation provided for the county having the largest valuation, even though the auditor of the latter county received as great or a greater amount in fees than did the auditor of the smallest county. The proper construction of the chapter is that it was intended to mean precisely the same as though a separate act or chapter had been enacted for each class of counties, each containing the provision regarding paying over the fees, instead of including the counties of all classes in one chapter, and not repeating the language of the paragraph relating to fees after each classification. While the language employed is not the most apt, and while the intent might have been made more plainly apparent, yet we are clearly of the opinion that this is the proper construction to place upon this law. No such conflict exists as to fees for certifying abstracts, and no attention need be given them. The fund collected by the auditor belongs to the county unless the statute shows a clear and plain legislative intent to grant it to a salaried officer. In other words, any doubt should, in case of a salaried officer, be resolved in favor of the public. If we were in doubt on the subject the rule announced in State v. Stockwell, 23 N. D. 70, 134 N. W. 767, would apply.

But it is next argued that all the auditors of the state have construed this statute as permitting them to retain the fees collected in addition to the salary prescribed, and that on the principle that a course of conduct indicating a common understanding by the administrative of-

ficers should have great weight in determining its real meaning, where such usage has been acquiesced in by all parties concerned and has extended over a long period of time; and a vast array of authorities is cited in support of this proposition. We need not consider them. Neither need we controvert the general principle enunciated. It has no application, however, in this case. Respondent says that all auditors have so construed the law. The appellant says that it has been construed by a large number of them in harmony with the conclusion of this court. We are not advised as to which is correct; but be the fact as it may be, the law had only been in force a relatively short time; the parties construing it were those interested, rather than other departments of government, and it appears that the legislature, by chap. 111, Laws of 1911, evinced its dissent from the construction placed upon the laws by those county auditors who had retained such fees. See also State v. Stockwell, supra.

6. Having determined that the relator is qualified to act in that capacity, that mandamus will lie to set the board of county commissioners in motion, that the fees belong to the county, there remains but one other question for consideration. It is sought, as we have shown, not only to direct the board to adjust the account, but also to instruct them to order the state's attorney to bring suit against the auditor. Some authorities are cited holding that this is a matter within the sound discretion of the board, on which its members must exercise their judgment and determine whether a suit is advisable. Without holding that these authorities are not in point under our statute, we will say that we do not feel justified in holding that the board should at this time be directed to order suit. The state of the law has been such that we cannot say that they have not acted in good faith, nor can we say that when advised by this court as to the ownership of the fees they will refuse to perform their duty in the premises. The refusal to order suit was undoubtedly grounded upon their opinion that there was nothing due the county by reason of the erroneous assumption that the fees belonged to the auditor, and it will be early enough to pass upon the power of the court to order the board to direct the state's attorney to bring suit when the necessity for doing so arises, if it ever does, by reason of a refusal or failure of the auditor to pay any sum found due the county after the adjustment, and the subsequent neglect of the board

to order suit. To pass upon it at the present time would be to assume that the board of county commissioners of Williams county, after being fully advised in the premises, will deliberately attempt to aid the auditor in retaining what does not belong to him but does belong to the county.

The order of the District Court is reversed, and this case is remanded for further proceedings in accordance with law.